FILED
2006 Aug-24  PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KATHY JORDAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:05-CV-0795-VEH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PARNELL, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the Defendant's Motion for Summary Judgment filed on April 20, 2006.  Plaintiff Cathy Jordan filed a Complaint on April 15, 2005, alleging claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 and  29 C.F.R. §§ 778.108, 778.200, against Parnell, Inc., her previous employer.  Plaintiff alleges that Defendant Parnell, Inc. failed to compensate her appropriately for overtime pay and all hours worked over forty per week.  Plaintiff further alleges that Defendant's overtime premium payments were a violation of the FLSA and should have been included within the "regular rate" paid to Plaintiff.  Finally, Plaintiff alleges that she should be compensated for her lunch breaks and mealtimes since she

1

never took a lunch hour, she stopped to pick up lunch for herself and her boss and took it to the job, and because she would eat her lunch while her boss loaded the truck.  (Jordan Dep. p, 69, 76, 78).

Defendants contend that they are entitled to summary judgment in their favor as to all claims asserted against them.

The matters have been briefed extensively by all parties, and are now ripe for determination.

For the reasons stated, Defendant's motion for summary judgment is due to be **GRANTED**.

### <u>Facts</u>[1]

Cathy Jordan applied to work at Parnell, Inc., on September 28, 2004, and began work on October 1, 2004.  (Parnell Aff. ¶ 4).  Parnell, Inc., is a family company that cuts timber and hauls it to the mill for processing.  (Parnell Aff. ¶ 1).  Parnell, Inc., has had as few as seventeen and as many as twenty-three employees during the time Jordan worked.  (Parnell Aff. ¶ 3).  Jordan worked for Parnell, Inc., for twenty weeks from October 1, 2004 to February 17, 2005.  (Parnell Aff. ¶ 8).  Parnell, Inc., had three categories of employees; (1) hourly employees who cut and loaded the

_____

[1]The Plaintiff adopted the facts as set out by the Defendant (Plaintiff's Brief at p. 1).

timber; (2) hourly employees who drove the timber to the mills; and (3) supervisory employees.  (Parnell Aff. ¶ 3).  Jordan worked as a truck driver for Parnell, Inc. (Parnell Aff. ¶ 4).

In accordance with the custom in the timber cutting business, Parnell, Inc. paid its employees a premium of time and a half, which it called overtime, for all hours worked before 6 a.m. and after 5 p.m.  (Parnell Aff. ¶ 5; Jordan Dep. p. 198).  A regular work day ran from 6 a.m. to 5 p.m., and drivers' pay was calculated in that period for ten hours worked, with an hour for lunch, to be taken whenever and where ever the driver wanted.  (Parnell Aff. ¶ 6).  Jordan was paid $10.00 an hour for regular time and $15.00 an hour for premium/overtime.  (Parnell Aff. ¶ 4).  Jordan was paid $110.00 for a ten hour day.  (Parnell Aff. ¶ 6).  The $110.00 for a work day of ten hours contemplated eight hours at $10.00 an hour and two hours at $15.00 an hour. (Parnell Aff. ¶ 7).  The usual work week was five days long.  (Parnell Aff. ¶ 7). When the usual five work days of ten hours each were compensated in this fashion, at the end of the week, forty hours of Jordan's pay would be at $10.00 and ten hours would be at $15.00.  (Parnell Aff. ¶ 7).

Plaintiff was paid based on the time that she called in on Thursday night and gave to Joseph Parnell.  (Parnell Aff. ¶ 12).  Joseph Parnell wrote the time that she

gave him into the Payroll Worksheet.  (Parnell Aff. ¶ 12, 13).  Jordan was also supposed to keep her time in a written time sheet and turn it in.  (Parnell Aff. ¶ 12). Jordan cannot say whether she turned those time sheets in immediately after the week that they corresponded with.  (Jordan Dep. p. 178-9).  Joseph Parnell did not receive the time sheets in a timely manner and many of them were undated and many of them were given to him at the time that Jordan left.  (Parnell Aff. ¶ 13, 14).  Jordan only turned in thirteen timesheets.  (Parnell Aff. ¶ 14, Ex. 3).  Of these only eight are dated, five are not.  (Parnell Aff. ¶ 14, Ex. 3).  Jordan admits she kept three of the time sheets and did not turn them in.  (Jordan Dep. p. 176-7).  Jordan's time sheets were not accurate.  For instance, the time sheet for December 3, 2004, only reflects one day worked.  (Parnell Aff. ¶ 3).  However, for the week of December 3, 2004, the Payroll Worksheet reflects that she was paid for three full days, four regular hours and two hours overtime.  (Parnell Aff. Ex. 1).  Similarly, Jordan's time sheet for the week of January 1 shows she worked four full days, with overtime of 7.5 hours. (Parnell Aff. Ex. 3).  However, the Payroll Worksheet reflects she was paid for four full days plus 9.5 hours of overtime.  (Parnell Aff. Ex. 1).

During the time that Jordan worked for Parnell, Inc., Joseph Parnell was the person responsible for receiving the employees' time and maintaining the payroll

work sheets and issuing the employees' paychecks. (Parnell Aff. ¶ 12; Jordan Dep. p. 109-110). Employees would call in on Thursday evening to Joseph Parnell who would enter their time on the payroll work sheet. (Parnell Aff. ¶ 12, 13). The payroll work sheet would reflect the daily wage paid to the employee. (Parnell Aff. ¶ 9, 10, 11). Jordan was paid a daily wage of $110.00. (Parnell Aff. ¶ 6). On the Payroll Worksheet, the column headed "number of days" reflects the full day worked from 6 a.m. to 5 p.m. The next column heading, "regular hours," reflects the number of hours worked when the employee did not work a full day, but worked between 6 a.m. and 5 p.m. (Parnell Aff. ¶ 9). These regular hours were compensated at a rate of $10.00. (Parnell Aff. ¶ 9). The next column heading on the Payroll Worksheet, "enter O.T.," reflects overtime (premium) worked before 6 a.m. and after 5 p.m. as reported by the employee. (Parnell Aff. ¶ 9). The following column on the worksheet, "Tot. Pay," is the number of full days worked, multiplied by $110, plus the regular hours worked, multiplied by $10. (Parnell Aff. ¶ 9). The final column on the Payroll Worksheet is "Tot. O.T. Hours" is the total of overtime hours reported. (Parnell Aff. ¶ 11). Jordan cannot testify that she turned the time sheets in at the time that she called them in. (Jordan Dep. p. 178-9). She also admits that the time sheets and what she told Joseph Parnell should be the same. (Jordan Dep. p. 188-9). She

does not dispute the times that she wrote down and the times that she called in are correct.  (Jordan Dep. p. 201-2).  Finally, Jordan admits that Joseph Parnell relied on her to tell him how many hours she worked and how many overtime hours that she worked.  (Jordan Dep. p. 191).

The Payroll Worksheets are available for every week except for the first week that Jordan worked.  According to Parnell, the number of days that Jordan worked can be determined by taking the daily wage reported on the pay stub, which is $580.00, and dividing it by the daily wage amount of $110, which results in five full days plus three regular hours at $10.

While she was employed, Jordan did not complain about not being paid overtime.  She says that she knew time worked before 6 a.m. was counted as overtime and time worked after 5 p.m. was counted as overtime.  (Jordan Dep. p. 148).  Jordan concedes that she cannot compare her time sheets with her pay stubs because there are no dates on many of her time sheets.  (Jordan Dep. p. 170-1).  (Parnell Aff. ¶ 15).  It is explained to all employees that they are provided with a cellular phone for business purposes but that they would be liable for any expenses beyond the base price.  (Parnell Aff. ¶ 16).  Jordan acknowledges that this was explained to her and charged to her.  (Jordan Dep. p. 162-3).  Jordan says that despite the fact that her

complaint says she had an hour for lunch, she never took a lunch hour.  (Jordan Dep. p. 69).  Jordan says that she stopped to pick up lunch, but never had lunch where she stopped, but would pick up lunch for herself and her boss and take it to the job. (Jordan Dep. p. 75-6).  Jordan says that there was nothing that required her to bring lunch to the work site and eat it at the work site.  (Jordan Dep. p. 133-4).

### Standard of Review for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for

trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such

a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a

directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## **Analysis**

### I.    **Defendant Employer's "Premium" Pay Plan does not violate 29 U.S.C. § 201 as it applies to the Plaintiff.**

Under the Fair Labor Standards Act ("FLSA"), employers are required to pay overtime to employees who are "employed" more than forty hours per week.  29 U.S.C. § 207(a)(1); *see also Dade County v. Alvarez*, 124 F.2d 1380, 1384 (11th Cir. 1997).  The term "employ" is defined as "to suffer or permit work."  29 U.S.C. § 203(g); *see also Reich v. Dep't. of Conservation and Natural Ress., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994).  The FLSA establishes certain requirements for employers, including a minimum wage to be paid to employees, a maximum number of hours to be worked at a regular pay rate, and a requirement of overtime pay.  The general maximum hour provisions require that employers pay one and one-half times the "regular rate" of pay for overtime hours.  *See* 29 U.S.C. § 207(a)(1).  Although

the statute does not define "regular rate," the Supreme Court has stated that "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  *See* 29 C.F.R. § 778.108; *see also Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 1245, 89 L. Ed. 1705 (1945).  The Department of Labor has adopted this definition and stated that the regular rate cannot be less than the minimum wage.  29 C.F.R. §§ 778.107, 778.108.

In order for Plaintiff Cathy Jordan to recover for uncompensated overtime work under the FLSA, she must show that: (1) she worked overtime hours without compensation, and (2) that the defendant, Parnell, Inc., had knowledge, or should have had knowledge, of her overtime work.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946), *see also Reich*, 28 F.3d at 1082 (11th Cir. 1994).  An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.  *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972)[2] (upholding directed verdict for employer because employee was estopped from claiming more

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

hours than those submitted in time sheets).

In this case, Plaintiff called in her time which was then entered by Joseph Parnell.  Plaintiff does not dispute that Parnell wrote down the time she phoned in nor does she dispute that she was paid based on the times that she claimed.  The overtime pay reflected on the Plaintiff's paycheck stub is not overtime for purposes of the FLSA.  Rather it is a premium for hours worked before six a.m. and after five p.m. Such a premium payment is included in the 'regular rate.'  *See* 29 U.S.C. § 207(e)(5), (6), (7).  This premium payment is credited toward overtime payments for the purpose of the FLSA overtime provisions.  *See* 29 U.S.C. § 207(h)(2).

As reflected by the evidence in this case, the overtime (premium) payment on the Plaintiff's paycheck stubs correspond exactly to the overtime (premium) hours reflected on the weekly Payroll Worksheets.  As such, these payments are not in dispute.  Plaintiff was paid for all the time she claimed she worked before six a.m. and after five p.m.

Furthermore, evidence shows that Plaintiff was paid in excess of what she was due in regular time and overtime under the FLSA for 11 of the 20 weeks she worked. The evidence also shows that Plaintiff was paid exactly what she was due in regular time and overtime under the FLSA for 3 of the 20 weeks she worked.  Finally, the evidence reflects that Plaintiff was paid less than she was due in regular time and

overtime under the FLSA for 6 of the 20 weeks she worked.

The total amount due to Plaintiff for the 6 weeks she was paid less than the amount she was due is $275.81.  The total amount Plaintiff was paid in excess was $335.  In *Kohlheim v. Glynn County*, the Eleventh Circuit allowed Defendant to use all premium overtime to offset the statutory overtime found to be due.  915 F.2d 1473, 1481 (11th Cir. 1990).  Applying that setoff here, Defendant Parnell, Inc. has offset payments that exceed the amount it owes to Plaintiff by $59.19.  Therefore,  Plaintiff is owed nothing and, summary judgment for the defendant is appropriate.

**A.      Defendant's "Premium" Rate May be Excluded from the "Regular" Rate**

Plaintiff argues that Defendant did not properly pay her premium pay when she was paid $110 per day on days when she worked 10 hours, such that she was paid $10 an hour for the first eight hours and an additional $5 per hour for the last two hours. Plaintiff contends that under the definition of "regular rate" stated in 29 C.F.R. § 778.108, the last two hours of the workday cannot be broken out and paid at the premium rate of the additional $5 per hour.  This Court finds that the Plaintiff's claim has no merit and is incorrect.

29 C.F.R. § 778.200 identifies seven exclusions which an employer is not required to include in the "regular rate" at which an employee is paid.  Specifically, 29 C.F.R. § 778.200(a)(5) states:

> Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be.

Furthermore, 29 C.F.R. § 778.202(a) elaborates by stating:

> If the payment of such contract overtime compensation is in fact contingent upon the employee's having worked in excess of 8 hours in a day or in excess of the number of hours in the workweek specified in section 7(a) of the Act as the weekly maximum, the extra premium compensation paid for the excess hours is excludable from the regular rate under section 7(e)(5) and may be credited toward statutory overtime payments pursuant to section 7(h) of the act.

The above statutory provisions detail precisely the case that is before this Court.  The affidavit of Joseph Parnell reflects that $110 was only paid when Plaintiff worked 10 hours in the day, but Plaintiff was paid $10 per hour when Plaintiff did not work a full 10-hour day.  *See* Parnell Aff. ¶¶ 6-9.  The premium payment program implemented by the Defendant is in perfect accord with the statutory language set out in 29 C.F.R. § 778.202(a) since Plaintiff was not paid the premium of $5 per hour for the last two hours unless she worked them.  Consequently, in accordance with the corresponding statutes, the additional premium paid for the additional two hours was excludable from the regular rate under section 7(e)(5).

14

**B.     Defendant's additional pay after 8 hours of work is not an illegal "split-day" plan.**

Plaintiff argues that Defendant's premium rate plan is an illegal "split-day" plan designed as a device to evade the overtime requirements of the Act.  Under this type of plan, the normal workday is artificially divided into two portions, one of which is arbitrarily labeled the "straight time" portion of the day while the other is labeled the "overtime" portion.  Within the details of a split day plan, an employee who would ordinarily command an hourly rate of pay well in excess of the minimum for his work is assigned a low hourly rate, often the minimum, for the first few hours of each day.  This rate is designated as the regular rate.  For example, under this type of plan, an employee is arbitrarily assigned an hourly rate of $5 per hour under a contract which provides so-called "overtime" for all hours worked in excess of four per day.  Therefore, for a normal 8-hour workday, the employee would receive $20 for the first four hours and $30 for the remaining four hours.

Despite Plaintiff's arguments, the Defendant's plan is not an illegal "split-day" plan.  First, a typical requirement for an illegal "split-day" plan is an initial hourly rate at or below minimum wage.  *See* 29 C.F.R. § 778.500.  In this case, Plaintiff was paid $10 per hour which is well above the minimum wage and is not considered a low hourly rate.  Second, the $10 per hour rate was not for the first two to four hours, but

rather, it was for the first eight hours.  Third, statutory authority states that such a division of the normal 8-hour workday into 4 straight time hours and 4 overtime hours is purely fictitious.  *See* 29 C.F.R. § 778.501(b).  It follows that if the normal day is 8 hours, then paying the premium $5 per hour after the "normal 8-hour day," as was done here, does not meet the definition of a "split-day" plan.

## II.   Plaintiff is not entitled to compensation for her mealtimes.

Plaintiff argues that she is entitled to compensation during her mealtime because she "was not completely relieved of her duties."  (Pl. Br. 12-13).  She claims that she would eat her meals in the truck while her boss loaded her truck and, for this reason, she claims her mealtime was compensable time for which she was not paid. (Pl. Br. 12).  Plaintiff cites to 29 C.F.R. § 785.19(a) as authority which states:

> (a) Bona fide meal periods.  Bona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  They are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

There is no evidence in the record that Plaintiff was required to eat in her truck, or be in her truck while eating.  It is undisputed that Defendant

calculated the time its drivers worked from 6 a.m. to 5 p.m as ten hours work time with an hour for lunch and the driver could take lunch anytime or anywhere they wanted.  In addition, the facts support Defendant's claim that Plaintiff had her lunchtime to use as she pleased.  Plaintiff also admits that she was not required to bring her lunch to the work site to eat it, nor was she required to go to a restaurant to get lunch, but it was just something she did. (Jordan Dep. p. 133-135).  Plaintiff further admitted that she could have eaten her lunch anytime of the day she wanted to.  (Jordan Dep. p. 135).  Therefore, Plaintiff cannot rely on 29 C.F.R. § 785.19(a) to say she was required to work during her lunchtime.

In addition to Defendant's argument that Plaintiff's claims under 29 C.F.R. § 785.19(a) carry no merit, the facts in *Clark v. Atlanta Newspapers, Inc.* support Defendant's motion for granted summary judgment.  In *Clark*, the Plaintiff claimed he should be compensated for his lunch breaks because he sat at his desk, drank coffee, and ate a sandwich rather than going out to lunch. *Clark v. Atlanta Newspapers, Inc.*, 366 F. Supp. 886, 891 (N.D. Ga. 1973). The Court in *Clark* held that, because Plaintiff was free to leave the premises or to engage in meals and other personal matters, the lunch hour was non-compensable time under the FLSA.  *Id*.  Under the applicable case law, the

17

Court held that the periods in question met the three prerequisites for a finding that they do not constitute compensable time. *Id*. at 892. First, each period was thirty minutes or longer, and opportunity was provided to completely leave the work premises. *Id*. (citing *Wirtz v. Healy*, 227 F. Supp. 123 (D.C. Ill. 1964). Second, plaintiff was completely relieved of all his duties during these periods. *Id*. Third, plaintiff was free to leave his post of duty. *Id*. The fact that plaintiff chose to remain at his desk during the coffee-break and lunch hour to answer the phone or catch up on work did not transform these non-compensable periods into hours worked. *Id*. (citing *Thomas v. Peerless Carbon Co.*, 62 F. Supp. 154, 155 (D.C. Tex. 1945).

Plaintiff contends that *Clark* is inapplicable because 29 C.F.R. § 785.11 states that "work not requested but suffered or permitted is work time." (Pl. Br. 12). However, *Clark* specifically addressed this objection in stating:

> Plaintiff's reliance on the general statement in 29 C.F.R. § 785.11 that "work not requested but suffered or permitted is work time," does not assist Plaintiff, given the circumstances of Plaintiff's work situation. The cases cited in the above regulation indicate that the general rule is meant to cover a situation where the circumstances of a worker's employment require that he remain on duty during break periods, even though the time is not technically observed as "work time." In *Handler v. Thrasher*, 191 F.2d 120 (10th Cir. 1951), for example, the plaintiff employee was required by his job contract to live on a 160-acre oil and gas leasehold and do whatever work was necessary to keep the oil

wells under his supervision and in operation.  While the employee was technically employed for a five-day week, the Court of Appeals found that the nature of his work effectively required him to be on duty for varying hours seven days a week, and that the time he spent on Saturdays and Sundays supervising the wells was fully compensable.  The remaining cases cited in support of the regulation similarly illustrate the disparity between the work situations sought to be covered and plaintiff's desire to drink coffee and eat a sandwich at his desk rather than leave the office.

Similarly, the court finds inapplicable to the present case the language relied on by plaintiff in 29 C.F.R. § 785.13 which reads: "In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so."  This statement is supported by no decisional authority, and the court finds that it relates to the general proposition, not applicable here, that an employer cannot *sub silentio* "expect" his employee to continue working in his regular employment capacity during nominal break periods without providing compensation. Examples of work situations to which this rule would seem to be applicable are found in the cases cited in support of 29 C.F.R. § 785.11.  Here, the master could clearly find, in light of plaintiff and his fellow staff members leaving the premises on a frequent basis, that there was no clear "expectancy" that plaintiff remain at his desk or risk the disapproval of his superiors.

*Clark v. Atlanta Newspapers, Inc.*, 366 F. Supp 886, 892-3 (N.D. Ga. 1973).

Plaintiff cannot point to facts that show there was "an expectancy" that she remain in her truck.  Furthermore, Plaintiff's situation satisfies the three prerequisites

for a finding of non-compensable time laid out in *Clark*. Plaintiff's break was over 30 minutes, she testified that she was free to leave and spend her lunchtime wherever she desired, whenever she desired, and Plaintiff was completely relieved of all her duties during these periods. Applicable case law demonstrates that Plaintiff's lunch hour was non-compensable. Plaintiff has offered no statutory authority or case law that supports her contention that her lunch hour time was work time and, therefore, compensable time. For these reasons, summary judgment is appropriate and Defendant is not required to compensate Plaintiff for mealtimes.

## Conclusion

Jordan has failed to establish that Parnell, Inc., failed to appropriately compensate her for FLSA purposes and that the premium payment plan implemented by Parnell, Inc., was in violation of FLSA guidelines. Jordan has also failed to cite authority showing that she is entitled to be compensated during mealtimes. Therefore, her claims cannot survive summary judgment.

For the reasons stated, the court finds that Defendant's Motion for Summary Judgment is due to be **GRANTED**.

A separate Order will be entered.

**DONE** and **ORDERED** this 24th day of August, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge